IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | Criminal No. 3:19-cr-61(TJM) |
| ) | |
| v.  ) | Information |
| ) | |
| **ANDREW N. LaVIGNE,** ) | Violations: 18 U.S.C. § 152(7) |
| ) | [Fraudulent Concealment of |
| **Defendant.** ) | Property] |
| ) | 18 U.S.C. § 1341 |
| ) | [Mail Fraud] |
| ) | 18 U.S.C. § 1957(a) |
| ) | [Money Laundering] |
| ) | |
| ) | 4 Counts |
| ) | |
| ) | County of Offense: Tompkins |

## THE UNITED STATES ATTORNEY CHARGES:

### Background

1.  On June 4, 2004, defendant **ANDREW N. LaVIGNE** filed a petition for voluntary personal bankruptcy pursuant to Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Northern District of New York in Case Number No. 04-64078, later renumbered as 06-30090. When he filed his bankruptcy petition, defendant **LaVIGNE** owed approximately $7.6 million to over 80 unsecured creditors following defendant **LaVIGNE**'s failed scheme to use capital from individual investors to purchase sports and entertainment memorabilia and resell it for a profit.

2.  In filing for bankruptcy, defendant **LaVIGNE** submitted documents to the United States Bankruptcy Court stating that his only sources of income came from his accounting practice, tax refunds, and nominal interest income. He stated that his total monthly income as a certified

public accountant was $10,000, and that the gross income from his accounting practice in 2002 was approximately $205,000 and in 2003 was approximately $191,000.

3. As part of the bankruptcy proceeding, defendant **LaVIGNE** proposed a Chapter 11 plan of liquidation (the "Plan") that would provide approximately $160,000 toward his debts, an amount that was insufficient to cover even administrative expenses associated with his bankruptcy, leaving his creditors unpaid. In support of the Plan, defendant **LaVIGNE** disclosed that his only asset was his personal residence and that his accounting practice had no value that would benefit the bankruptcy estate.

4. Based on defendant **LaVIGNE**'s disclosures and the information available throughout the bankruptcy proceeding, the United States Trustee for the Northern District of New York made no objection to the Plan, and the United States Bankruptcy Court confirmed it on July 21, 2014. Also, on July 21, 2014, the Bankruptcy Court granted defendant **LaVIGNE** a discharge of his more that $7 million in debt.

5. Defendant **LaVIGNE**'s bankruptcy was reopened in May 2015 and remains pending. None of defendant **LaVIGNE**'s creditors have been paid through the bankruptcy proceeding.

6. An accounting firm owned and operated by defendant **LaVIGNE** named "Andrew N. LaVigne, CPA, PLLC" was one of the assets in the bankruptcy estate, meaning that it could be sold and the proceeds from the sale be used to pay **LaVIGNE**'s creditors (the "accounting firm"). In 2007, defendant **LaVIGNE** himself arranged to purchase the accounting firm from the bankruptcy estate. Revenue earned by the accounting firm after this purchase would not be part of the bankruptcy estate. Defendant **LaVIGNE** thereafter used bank accounts related to the

accounting firm to conceal funds that he received and used for his benefit and the benefit of members of his family from the United States Bankruptcy Court and United States Trustee.

7.      From at least on or about January 1, 2011, through and including at least on or about July 21, 2014, defendant **LaVIGNE** maintained an account ending in 6573 at the Tompkins Trust Company titled "Andrew N. LaVigne CPA PLLC Escrow Checking" (the "Escrow Account"). Defendant LaVigne also maintained an account ending in 6565 at the Tompkins Trust Company titled "Andrew N. LaVigne CPA PLLC" (the "Operating Account"). Defendant **LaVIGNE** used the Operating Account to receive revenue and pay for the accounting firm's routine expenses, including payroll.

8.      From at least on or about January 1, 2011, through and including at least on or about July 21, 2014, defendant **LaVIGNE** used the Escrow Account and Operating Account to receive and use for his benefit and the benefit of his family members, funds that were not related to the accounting practice, and to conceal these funds, which should have been reported to the United States Bankruptcy Court and the United States Trustee as part of his bankruptcy proceeding.

9.      Many payments to the Escrow Account came from entities that defendant **LaVIGNE** assisted in creating for an individual whose initials are R.M. (the "R.M. Organization"). The purported purpose of the R.M. Organization was to hold a multimillion-dollar family inheritance and create and distribute income to R.M. and her family. Defendant **LaVIGNE** persuaded R.M. to transfer funds from the R.M. Organization to the Escrow Account, which made it appear as if these funds related to the accounting practice. He then used the money for his own purposes, including by transferring tens of thousands of dollars to the Operating Account and then writing checks drawn on this account to himself totaling tens of thousands of dollars. Defendant

LaVIGNE did not disclose his receipt or use of these funds to the Bankruptcy Court or the United States Trustee.

## COUNTS 1-2
### [Fraudulent Concealment of Property]

10. The allegations set out in Paragraphs 1 through 9 above are hereby incorporated by reference as if fully set forth herein.

11. From on or about the following dates, through on or about July 21, 2014, in Tompkins County in the Northern District of New York, and elsewhere, the defendant, **ANDREW N. LaVIGNE**, in his personal capacity as debtor in Case Number 06-30090 in the United States Bankruptcy Court for the Northern District of New York, with intent to defeat the provisions of Title 11 of the United States Code, knowingly and fraudulently concealed his property and the property of other persons and corporations in the following amounts, each constituting a separate count:

| Count | Date Concealment Began | Concealed Property |
|---|---|---|
| 1 | June 23, 2011 | $1.5 million payment from the R.M. Organization to the Escrow Account ending 6573 |
| 2 | February 7, 2013 | $200,000 payment from the R.M. Organization to the Escrow Account ending 6573 |

All in violation of 18 U.S.C. § 152(7).

## COUNT 3
### [Mail Fraud]

### The Scheme

12. The allegations set out in Paragraphs 1 through 9 above are hereby incorporated by reference as if fully set forth herein.

13. Between in or about June 24, 2014, and August 11, 2016, the defendant, **ANDREW N. LaVIGNE**, devised and intended to devise a scheme and artifice to defraud and to obtain money

4

and property, by means of materially false and fraudulent pretenses, representations, promises, and material omissions.

## Manner and Means

14. In 2014, B.C. and defendant **LaVIGNE** both were trustees of a revocable inter vivos trust funded by B.C. and the legacy of her late husband (the "Trust"). Cornell University, Office of Trusts, Estates & Gift Planning ("Cornell"), served as an agent for the Trust, acting as custodian for its assets and providing investment recommendations to the Trust's trustees. The Trust's assets were maintained by Bank of New York Mellon, Private Wealth ("BNY Mellon").

15. The Trust was intended to provide lifetime income to B.C. and her husband, and specific bequests to certain family members, with the balance of the Trust to be distributed to Cornell University's Johnson Business School after the deaths of B.C. and her husband.

16. As defendant **LaVIGNE** knew, apart from receiving pre-set, monthly distributions from the Trust, B.C. could request additional distributions from the Trust in any amount and for any purpose by making a written request to Cornell. As a trustee, defendant **LaVIGNE** could also make distribution requests on B.C.'s behalf. Upon receiving a signed request from B.C. or from defendant **LaVIGNE** for an additional distribution on behalf of B.C., Cornell would instruct BNY Mellon to send by overnight mail a check to the requestor in the amount specified. As agent, Cornell could make investment recommendations, but, as defendant **LaVIGNE** knew, Cornell could not refuse a distribution request from B.C. or from defendant **LaVIGNE**, nor could Cornell prevent B.C. from using assets from the Trust as she desired during her lifetime.

17. In 2014, defendant **LaVIGNE** convinced B.C. to invest trust funds in an entity he created called "Pier Road Properties, LLC," which he represented as having the objective of developing a parcel of waterfront property at 101 Pier Road in Ithaca, New York.

5

18.     Between on or about June 24, 2014, and on or about January 13, 2016, defendant **LaVIGNE** submitted sixteen requests to Cornell on his own letterhead seeking funds from the Trust to acquire ownership interests for B.C. in Pier Road Properties, LLC at a cost of $100,000 per 2.5% interest share. Over a seventeen-month period, in response to these requests, defendant **LaVIGNE** received $3.6 million in the Trust's funds from BNY Mellon by check via mail. These distributions of the Trust's funds resulted in B.C. obtaining a 90% ownership interest in Pier Road Properties, LLC. Defendant **LaVIGNE** also submitted separate distribution requests for a quarterly $7,500 fee for "professional services" rendered with respect to the Trust, totaling $30,000 per year. Each distribution request from defendant **LaVIGNE** included a signature, purportedly from B.C., and a hand-written notation stating "O.K. to Pay."

19.     Defendant **LaVIGNE** deposited the distribution checks he received from BNY Mellon into the Escrow Account.

20.     Between on or about February 10, 2016, and on or about August 9, 2016, defendant **LaVIGNE** submitted five additional requests to Cornell for distributions from the Trust, each for $200,000. Each of these requests contained an authorizing signature purportedly from B.C. Unlike the prior distribution requests, these five requests did not indicate that the money would increase B.C.'s ownership interest in Pier Road Properties, LLC. Rather, each of these five distribution requests noted that the funds were to be "used to invest in Pier Road Properties, LLC," which is what defendant **LaVIGNE** promised B.C. he would do with the funds.

21.     Pursuant to these five distribution requests, BNY Mellon mailed defendant **LaVIGNE** five $200,000 checks, totaling $1 million, each of which defendant **LaVIGNE** deposited into the Escrow Account. Defendant **LaVIGNE**'s representations to B.C. and Cornell that these last five distributions would be used to invest in Pier Road Properties, LLC were false

and fraudulent. After obtaining these distributions, defendant **LaVIGNE** transferred most of the funds out of the Escrow Account and used the money for personal purposes that did not relate to Pier Road Properties, LLC, were not authorized by or disclosed to B.C., and did not benefit B.C. Among other things, defendant **LaVIGNE** wrote checks to himself, paid for the construction of a house for his daughter, funded payroll for his accounting practice, and made payments to the R.M. Organization.

22. On or about June 16, 2016, in Tompkins County in the Northern District of New York, and elsewhere, the defendant, **ANDREW N. LaVIGNE**, for the purpose of executing the scheme and artifice described above and to obtain money by means of material false and fraudulent pretenses, representations, and promises, knowingly caused to be delivered by the United States Postal Service a check in the amount of $200,000 from BNY Mellon, NA made out to Andrew N. LaVigne, C.P.A., LLC, Escrow Account, in violation of Title 18, United States Code, Section 1341.

## COUNT 4
### [Money Laundering]

23. The allegations set out in Paragraphs 1 through 9 and 12 through 22 above are hereby incorporated by reference as if fully set forth herein.

24. On or about June 29, 2016, in Tompkins County in the Northern District of New York, and elsewhere in the United States, the defendant, **ANDREW N. LaVIGNE**, did knowingly engage in a monetary transaction by, through, and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, mail fraud, in violation of Title 18, United States Code, Section 1341, in that the defendant transferred $72,000 from the Escrow Account to

a Tompkins Trust Company account ending in 6565 titled "Andrew N. LaVigne CPA PLLC," in violation of Title 18, United States Code, Section 1957(a).

## FORFEITURE ALLEGATION

25. The allegations contained in Count 3 of this information are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Title 21 United States Code, Section 853(p).

26. Pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Title 21 United States Code, Section 853(p), upon conviction of mail fraud in violation of Title 18, United States Code, Section 1341, the defendant, **ANDREW N. LaVIGNE**, shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to said violation. The property to be forfeited includes, but is not limited to, the following:

(a)     $1,000,000.00 in U.S. currency

27. If any of the property described above, as a result of any act or omission of the defendant:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

Dated: February 19, 2019

GRANT C. JAQUITH
United States Attorney

By: *[signature]*

Michael F. Perry,
Bar. Roll No. 518952
Carina H. Schoenberger,
Bar. Roll No. 519684
Assistant United States Attorneys