IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No. ~~xxxx-CR-xxxx (xxx)~~ 3:19-cr-61(TJM) |
| | ) | |
| **v.** | ) | **Plea Agreement** |
| | ) | |
| **ANDREW N. LaVIGNE,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

The United States of America, by and through its counsel of record, the United States Attorney for the Northern District of New York, and defendant **ANDREW N. LaVIGNE** (hereinafter "the defendant"), by and through the defendant's counsel of record, hereby enter into the following plea agreement pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure:

1) **The Defendant's Obligations:**

   a) **Guilty Plea:** The defendant will waive indictment and plead guilty to Counts 1-4 of the information in Case No. **3:19-cr-61(TJM)**, charging two counts of fraudulent concealment of property, in violation of 18 U.S.C. § 152(7); one count of mail fraud, in violation of 18 U.S.C. § 1341; and one count of money laundering, in violation of 18 U.S.C. § 1957(a).

   b) **Special Assessment:** The defendant will pay an assessment of $100 per count of conviction pursuant to 18 U.S.C. § 3013. The defendant agrees to deliver a check or money order to the Clerk of the Court in the amount of $400, payable to the U.S. District Court, at the time of sentencing.

   c) **Compliance with Other Terms of Agreement:** The defendant will comply in a timely manner with all of the terms of this plea agreement.

d) **Restitution:** The defendant will consent to entry of an order directing the defendant's payment of restitution in full to any person or entity who qualifies as a victim of any offense of conviction under 18 U.S.C. § 3663 or § 3663A.

e) **Forfeiture:** Pursuant to 18 U.S.C. § 981(a)(1)(c), 28 U.S.C. § 2461, and 21 U.S.C. § 853(p), the defendant will consent to entry of an order directing forfeiture to the United States of the property described in the Forfeiture Allegation in the information described above, or to any substitute assets, or to a money judgment, all as more fully set out below:

   (1) A money judgment in the amount of $1,000,000.00, representing the unrecovered proceeds obtained by the defendant as a result of the conduct charged in Count 3.

f) **Access to Records:** The defendant will provide any privacy waivers, consents, or releases requested by the United States Attorney's Office to access records to verify the defendant's financial disclosures. The defendant authorizes the United States Attorney's Office to inspect and copy all financial documents and information provided by the defendant to the U.S. Probation Office.

g) **Sworn Examination / Polygraph:** The defendant will submit to an examination under oath and/or a polygraph examination conducted by an examiner selected by the United States Attorney's Office on the issue of the defendant's financial disclosures and assets, if deemed necessary by the United States Attorney's Office.

h) **No Transfer of Assets:** The defendant certifies that the defendant has made no transfer of assets in contemplation of this prosecution for the purpose of evading or defeating financial obligations that are created by this plea agreement and/or that may be imposed by the Court. In addition, the defendant promises not to make any such transfers in the future.

2

2)   **The Government's Obligations:**

   a)  **Non-prosecution for other offenses:** For so long as the defendant's guilty plea and the sentence remain in effect, the government will not seek other federal criminal charges against the defendant based on conduct described in the information in Case No. 3:19-cr-61(TJM) and/or in the paragraph of this agreement entitled "Factual Basis for Guilty Plea," occurring before the date on which the defendant signs this agreement. This agreement does not prevent the government from seeking charges based on other conduct.

   b)  **Compliance with Other Terms of Agreement:** The government will comply in a timely manner with all of the terms of this plea agreement.

3)   **Potential Maximum Penalties:** The defendant understands that the Court can impose the following maximum penalties for the offenses to which the defendant agrees to plead guilty and may be required to impose mandatory minimum terms of imprisonment, all as set out below:

   a)  **Fraudulent Concealment of Property:**

      (1) <u>Maximum term of imprisonment</u>: 5 years, pursuant to 18 U.S.C. § 152.

      (2) <u>Maximum fine</u>: $250,000, pursuant to 18 U.S.C. § 3571.

   b)  **Mail Fraud:**

      (1) <u>Maximum term of imprisonment</u>: 20 years, pursuant to 18 U.S.C. § 1341.

      (2) <u>Maximum fine</u>: $250,000, pursuant to 18 U.S.C. § 3571. The Court has discretion pursuant to 18 U.S.C. § 3571(b) & (d) to impose an alternative fine of the greater of $250,000 or twice the pecuniary gain to the defendant or loss to any victim resulting from the offense of conviction.

   c)  **Money Laundering:**

      (1) <u>Maximum term of imprisonment</u>: 10 years, pursuant to 18 U.S.C. § 1957.

3

(2) <u>Maximum fine</u>: $250,000, pursuant to 18 U.S.C. § 3571.

d) **All Offenses:**

(1) <u>Supervised release term</u>: In addition to imposing any other penalty, the sentencing court may require the defendant to serve a term of supervised release of up to 3 years, to begin after imprisonment. *See* 18 U.S.C. § 3583. A violation of the conditions of supervised release during that time period may result in the defendant being sentenced to an additional term of imprisonment of up to 2 years.

(2) <u>Other adverse consequences</u>: Other adverse consequences may result from the defendant's guilty plea as further described in paragraph F below.

4) **Elements of Offenses:** The defendant understands that the following are the elements of the offenses to which the defendant agrees to plead guilty. The defendant admits that the defendant's conduct satisfies each and every one of these elements.

a) **Fraudulent Concealment of Property:**

(1) The defendant knowingly and fraudulently transferred or concealed the defendant's property or the property of another; and

(2) Such act of transfer or concealment was done with the intent to defeat the provisions of Title 11, or in contemplation of a case under Title 11.

b) **Mail Fraud:**

(1) The defendant devised or intended to devise a scheme or artifice to defraud or to obtain money or property by means of false or fraudulent pretenses, representations, or promises;

(2) The defendant acted with intent to defraud; and

4

    (3) For the purpose of executing the scheme or artifice or attempting to do so, the defendant knowingly caused to be delivered by mail or by any private or commercial interstate carrier any matter or thing according to the direction thereon or at the place at which it is directed to be delivered by the person to whom it is addressed.

**c) Money Laundering:**

    (1) The defendant knowingly engaged in a monetary transaction;

    (2) The monetary transaction was of a value greater than $10,000;

    (3) The monetary transaction involved criminally derived property;

    (4) The criminally derived property was derived from specified unlawful activity;

    (5) The defendant knew that the monetary transaction involved criminally derived property; and

    (6) The monetary transaction took place within the United States.

5)   **Factual Basis for Guilty Plea:** The defendant admits the following facts, that those facts demonstrate the defendant's guilt for the offenses to which the defendant is pleading guilty, and that there are no facts establishing a viable defense to those offenses:

    a) At all times relevant to the charges in the information in Case No. 3:19-cr-61-TJM, the defendant has been a Certified Public Accountant ("CPA") who owns and operates an accounting practice named "Andrew N. LaVigne, CPA, PLLC" (the "CPA firm") in Ithaca, New York.

    b) On June 4, 2004, the defendant filed a petition for voluntary personal bankruptcy pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of New York, Case No. 04-64078, later renumbered as 06-30090. When he filed his bankruptcy petition, the defendant owed a

total of approximately $7.6 million to over 80 creditors following the defendant's failed scheme to use capital from individual investors to purchase sports and entertainment memorabilia and resell it for a profit.

c)  In filing for bankruptcy, the defendant submitted documents to the United States Bankruptcy Court stating that his only sources of income came from his accounting practice, tax refunds, and nominal interest income. He stated that his total monthly income as a certified public accountant was $10,000 and that the gross income from his accounting practice was approximately $205,000 in 2002 and approximately $191,000 in 2003.

d)  As part of the bankruptcy proceeding, the defendant proposed a Chapter 11 plan of liquidation (the "Plan") that would provide $160,000 to pay his debts, an amount that was insufficient to pay even administrative expenses associated with his bankruptcy, leaving his creditors unpaid. In support of the Plan, the defendant disclosed that his only asset was his personal residence and that his accounting practice had no value that would benefit the bankruptcy estate.

e)  Based on the defendant's disclosures and the information available throughout the bankruptcy proceeding, the United States Trustee for the Northern District of New York made no objection to the Plan, and the Bankruptcy Court confirmed it on July 21, 2014. Also, on July 21, 2014, the Bankruptcy Court granted the defendant a discharge of more than $7 million in debt.

f)  The defendant's bankruptcy was reopened in May 2015 and remains pending. None of the defendant's creditors have been paid through the bankruptcy proceeding.

g)  The CPA Firm was one of the assets in the bankruptcy estate, meaning that it could be sold and the proceeds from the sale be used to pay the defendant's creditors. In 2007, the

6

defendant arranged to purchase the accounting firm himself from the bankruptcy estate. Revenue earned by the accounting firm after this purchase would not be part of the bankruptcy estate. The defendant thereafter used bank accounts related to the CPA Firm to conceal funds that he received and used for his benefit and the benefit of members of his family from the United States Bankruptcy Court and United States Trustee.

h)  From at least January 1, 2011, through and including at least July 21, 2014, the defendant maintained an account ending in 6573 at the Tompkins Trust Company titled "Andrew N. LaVigne CPA PLLC Escrow Checking" (the "Escrow Account"). The defendant also maintained an account ending in 6565 at the Tompkins Trust Company titled "Andrew N. LaVigne CPA PLLC" (the "Operating Account"). The defendant used the Escrow Account and Operating Account to receive and use for his benefit and the benefit of his family members, funds that were not related to the accounting practice, and to conceal these funds, which should have been reported to the United States Bankruptcy Court and the United States Trustee as part of his bankruptcy proceeding.

i)  Many payments to the Escrow Account came from entities that the defendant assisted in creating for an individual whose initials are R.M. (the "R.M. Organization"). The purported purpose of the R.M. Organization was to hold a multimillion dollar family inheritance and create and distribute income to R.M. and her family. The defendant persuaded R.M. to transfer funds from the R.M. Organization to the Escrow Account, which made it appear as if these funds related to the accounting practice. He then used the money for his own purposes, including by transferring tens of thousands of dollars to the Operating Account and then writing checks drawn on this account to himself totaling

7

tens of thousands of dollars.  The defendant did not disclose his receipt or use of these funds to the Bankruptcy Court or the United States Trustee.

j) The defendant knowingly and fraudulently, and with the intent to defeat the provisions of the Bankruptcy Code, concealed, among other payments, payments from the R.M. Organization to the Escrow Account in the following amounts on the following dates: $1.5 million on June 23, 2011; and $200,000 on February 13, 2013.

k) These funds were not income to the CPA firm, but after depositing these funds into the Escrow Account, the defendant treated the funds as his own money and that of the CPA firm and used it for his own purposes and that of the CPA firm, including by transferring large sums of money from the Escrow Account to the Operating Account and then writing checks to himself totaling hundreds of thousands of dollars, which the defendant concealed from the Chapter 11 trustee, the United States Trustee, and the United States Bankruptcy Court.

l) The defendant concealed more than $3.5 million, but not more than $9.5 million, in assets from the United States Bankruptcy Court and the United States Trustee for the purpose of defeating provisions of the Bankruptcy Code.

m) In 2014, the defendant and an individual whose initials are B.C. were both trustees of a revocable inter vivos trust funded by B.C. and the legacy of her late husband (the "Trust"). Cornell University, Office of Trusts, Estates & Gift Planning ("Cornell"), served as an agent for the Trust, acting as custodian for its assets and providing investment recommendations to the Trust's trustees.  The Trust's assets were maintained by Bank of New York Mellon, Private Wealth ("BNY Mellon"), which is a financial institution.

n) The Trust was intended to provide lifetime income to B.C. and her husband, and specific bequests to certain family members, with the balance of the multimillion-dollar Trust to be distributed to Cornell University's Johnson Business School after the deaths of B.C. and her husband.

o) As the defendant knew, apart from receiving pre-set, monthly distributions from the Trust, B.C. could request additional distributions from the Trust in any amount and for any purpose by making a written request to Cornell.  As a trustee, the defendant could also make distribution requests on B.C.'s behalf.  Upon receiving a signed request for an additional distribution from B.C. or from the defendant, Cornell would instruct BNY Mellon to send by overnight mail a check to the requestor in the amount specified.  As agent, Cornell could make investment recommendations, but, as the defendant knew, Cornell could not refuse a distribution request from B.C. or the defendant or prevent B.C. from using assets from the Trust as she desired during her lifetime.

p) In 2014, the defendant convinced B.C. to invest trust funds in an entity he created called "Pier Road Properties, LLC," which he represented as having the objective of developing a parcel of waterfront property at 101 Pier Road in Ithaca, New York.

q) Between on or about June 24, 2014, and on or about January 13, 2016, the defendant submitted sixteen requests to Cornell on his own letterhead seeking funds from the Trust to acquire ownership interests for B.C. in Pier Road Properties, LLC at a cost of $100,000 per 2.5% interest share.  Over a seventeen-month period, in response to these requests, the defendant received $3.6 million in the Trust's funds from BNY Mellon by check via mail. These distributions of the Trust's funds resulted in B.C. obtaining a 90% ownership interest in Pier Road Properties, LLC.  The defendant also submitted separate distribution requests

for a quarterly $7,500 fee for "professional services" rendered with respect to the Trust, totaling $30,000 per year. Each distribution request from the defendant included a signature, purportedly from B.C., and a hand-written notation stating "O.K. to Pay."

r) The defendant deposited the distribution checks he received from BNY Mellon into the Escrow Account.

s) On September 26, 2014, and again on July 9, 2015, Cornell wrote to the defendant warning him that "the investment in Pier Road Properties, LLC is not a Cornell recommended investment," but noting that Cornell, in its capacity as agent of the Trust, would carry out the distribution instructions.

t) Between February 10, 2016, and August 9, 2016, the defendant submitted five additional requests for distributions from the Trust, each for $200,000. Each request contained an authorizing signature purportedly from B.C. Unlike the prior distribution requests, these five requests did not indicate that the money would increase B.C.'s ownership interest in Pier Road Properties, LLC. Rather, each of these five distribution requests specifically noted that the funds were to be "used to invest in Pier Road Properties, LLC," which is what the defendant promised B.C. he would do with the funds.

u) Pursuant to these five distribution requests, BNY Mellon mailed the defendant five checks, totaling $1 million, each of which the defendant deposited into his Escrow Account. The defendant's representations that these last five distributions would be used to invest in Pier Road Properties, LLC were false and fraudulent, as the defendant did not intend to (and, in fact, did not) use the money to invest in Pier Road Properties, LLC. The defendant also knew that BNY Mellon would use the United States Postal Service and/or a private or commercial interstate carrier to send the requested checks. Specifically, the defendant

caused the following checks to be mailed as part of his scheme to defraud B.C. and the
Trust:

- Check number 82041129 made out to Andrew N. LaVigne, C.P.A., LLC, Escrow
  Account in the amount of $200,000, mailed on February 24, 2016;

- Check number 82047323 made out to Andrew N. LaVigne, C.P.A., LLC, Escrow
  Account in the amount of $200,000, mailed on March 16, 2016;

- Check number 82063784 made out to Andrew N. LaVigne, C.P.A., LLC, Escrow
  Account in the amount of $200,000, mailed on April 18, 2016;

- Check number 82082588 made out to Andrew N. LaVigne, C.P.A., LLC, Escrow
  Account in the amount of $200,000, mailed on June 16, 2016; and

- Check number 82100077 made out to Andrew N. LaVigne, C.P.A., LLC, Escrow
  Account in the amount of $200,000, mailed on August 11, 2016.

v) After obtaining these last five distributions from the Trust, the defendant transferred most
of the funds out of the Escrow Account and used the money for purposes not authorized
by B.C. and unrelated to Pier Road Properties, LLC, including by writing checks to himself,
paying for the construction of a house for his daughter, funding payroll for his accounting
practice, and making payments to the R.M. Organization.  In doing so, the defendant
knowingly engaged in a monetary transaction by, through, and to a financial institution,
affecting interstate commerce, in criminally derived property of a value greater than
$10,000, such property having been derived from the defendant's mail fraud scheme
described above (which constituted specified unlawful activity).  Specifically, the
defendant transferred $72,000 from the Escrow Account to the Operating Account on June
29, 2016.

w) The defendant obtained $1,000,000 in unrecovered proceeds as a result of his mail fraud
scheme described above.

6) **Sentencing Stipulations:**

   a) The government will recommend a 2-level downward adjustment to the applicable federal sentencing guidelines offense level pursuant to U.S.S.G. §3E1.1(a) if, (i) through the time of sentencing, the government is convinced that the defendant has demonstrated "acceptance of responsibility" for the offenses to which the defendant is pleading guilty and all relevant conduct, as defined in U.S.S.G. § 1B1.3; and (ii) the government does not determine that the defendant, after signing this agreement, committed any other federal, state, or local crimes, or engaged in conduct that constitutes "obstruction of justice," as defined in U.S.S.G. §3C1.1.

   b) The government will move for a 1-level downward adjustment to the applicable federal sentencing guidelines offense level pursuant to U.S.S.G. §3E1.1(b) if the government is convinced that the defendant has accepted responsibility within the meaning of U.S.S.G. §3E1.1(a) and further assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, and the defendant otherwise qualifies for such adjustment by having a combined offense level of 16 or more before receipt of any acceptance of responsibility adjustment under U.S.S.G. §3E1.1(a).

7) **Waiver of Rights to Appeal and Collateral Attack:** The defendant waives (gives up) any and all rights, including those conferred by 18 U.S.C. § 3742 and/or 28 U.S.C. §§ 2241 and 2255, to appeal and/or to collaterally attack the following (except that the defendant does not waive the right to raise a claim based on alleged ineffective assistance of counsel):

a) The convictions resulting from the defendant's guilty plea;

b) Any claim that the statutes to which the defendant is pleading guilty is unconstitutional;

c) Any claim that the admitted conduct does not fall within the scope of the statute;

d) Any sentence to a term of imprisonment of 188 months or less;

e) Any sentence to a fine within the maximum permitted by law;

f) Any sentence to a term of supervised release within the maximum permitted by law;

g) Any order of forfeiture or restitution imposed by the Court that is consistent with governing law and is not contrary to the terms of this agreement.

Nothing in this appeal waiver is meant to be or should be construed as a representation of or agreement concerning the appropriate sentence in this case.

A. **Right to Counsel:** The defendant has a right to assistance of counsel in connection with settlement of this case and understands that right.  Defense counsel has advised the defendant of nature of the charges to which the defendant is agreeing to plead guilty and the range of possible sentences.

B. **Waiver of Trial-Related Rights:** The defendant has the following additional constitutional rights in connection with the charges in this case: (i) to be presumed innocent until proven guilty beyond a reasonable doubt; (ii) to plead not guilty; (iii) to trial by jury; (iv) to confront, cross-examine, and compel the attendance of witnesses at trial; (v) to present defense evidence; and (vi) to remain silent and be protected against compelled self-incrimination.  The defendant understands that by pleading guilty, the defendant waives (gives up) these rights.

C. **Court Not Bound by Plea Agreement:** This plea agreement is made pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure.  The Court is neither a party to, nor bound by this Plea Agreement.  The Court may accept or reject this Plea Agreement or defer a decision until it has considered the Presentence Investigation Report prepared by the United States Probation Office.  If the Court rejects the provisions of this agreement permitting the defendant to plead guilty to certain charges in satisfaction of other charges, the Court will permit the defendant to withdraw the plea of guilty before sentencing, pursuant to Fed. R. Crim. P. 11(c)(5) & (d).

D. **Court Not Bound by Agreed-Upon Recommendations, Stipulations, and Requests:** If this agreement contains any provisions under Fed. R. Crim. P. 11(c)(1)(B) by which the government agrees to recommend, stipulates, or agrees not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate or that a particular provision of the

federal sentencing guidelines, or a policy statement, or sentencing factor does or does not apply, such a recommendation, stipulation, or request does not bind the Court, which may make independent factual findings by a preponderance of the evidence and may reject such recommendations, requests, and stipulations between the parties.  If the Court rejects one or more recommendations, stipulations, or requests, the defendant is not entitled to withdraw the defendant's plea of guilty and is not released from the obligations described in this agreement. Under such circumstances, the government reserves the right to support and defend, in connection with any post-sentencing proceedings, any decision the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations, stipulations, or requests set out in this agreement.

E. **Sentencing:**

   a. **Maximum terms of imprisonment:**  The defendant understands that the Court has discretion to impose a sentence within the statutory maximum sentence(s) set out in this agreement.  If the defendant is pleading guilty to multiple charges, the Court may be required by law to have the sentences of imprisonment on the convictions resulting from those charges run consecutively to each other.  Otherwise, the Court has discretion to have sentences of imprisonment run concurrently or consecutively. *See* 18 U.S.C. § 3584.

   b. **Mandatory minimum terms of imprisonment:**  If specified in this agreement, the conviction on one or more charges to which the defendant has agreed to plead guilty may require imposition of a mandatory minimum term of imprisonment.  In such cases, the court must impose a term of imprisonment no less than the required mandatory

minimum term unless an exception to that requirement applies.  Such exception may be dependent on a motion by the government.

c.  **Section 851 Enhancements**: The defendant understands that if the government has filed an information against the defendant as provided in 21 U.S.C. § 851, alleging that the defendant has one or more final convictions for a serious drug felony and/or a serious violent felony, and, as part of this agreement, the defendant has admitted and/or affirmed that the defendant was so convicted, then, by pleading guilty, the defendant will lose the right to attack any sentence the court imposes by challenging  any  such prior conviction.

d.  **Sentencing guidelines:**

i.   The actual sentence to be imposed upon the defendant is within the discretion of the sentencing Court, subject to the statutory maximum and mandatory minimum penalties, as described above, and the provisions of the Sentencing Reform Act and the United States Sentencing Guidelines promulgated thereunder.  While the Court is not bound to impose a sentence within the applicable sentencing guidelines range, it must take into account the sentencing guidelines, along with the other factors set forth in 18 U.S.C. § 3553(a).

ii.  Any estimate of the defendant's offense level, criminal history category, and sentencing guidelines range provided before sentencing is preliminary and is not binding on the parties to this agreement, the Probation Office, or the Court. Until the Probation Office has fully investigated the defendant's criminal history, it is not possible to predict with certainty the defendant's criminal history category and, in some cases, the defendant's offense level.

iii.  Under certain circumstances, the defendant's criminal history may affect the defendant's offense level under the federal sentencing guidelines. If the presentence investigation reveals that the defendant's criminal history may support an offense level different than an offense level stipulated in this agreement, the parties are not bound by any such stipulation as to the defendant's offense level and may advocate with respect to how the defendant's criminal history affects the offense level.

e.  **Factual findings:**  The defendant understands that the sentencing Court may make factual findings with respect to any and all sentencing factors and issues, including those referenced in the United States Sentencing Guidelines, whether or not such factors or issues have been admitted by the defendant or stipulated by the parties.  In making those findings by a preponderance of the evidence, the Court may consider any reliable evidence, including hearsay.  The Defendant understands that the sentence imposed may be determined based upon such judicial fact-finding.

f.  **Use of the Defendant's Statements:** The defendant understands that the sentencing court may consider any statement that the defendant has made or makes in this Plea Agreement, during the guilty plea, to the Probation Office, and at sentencing when imposing sentence.  In addition the government may be able to use the defendant's statements in this agreement and at the guilty plea and at sentencing in any criminal, civil, or administrative proceeding.  For example, if the defendant fails to enter a guilty plea (as required by this agreement) or the defendant's guilty plea is later withdrawn or vacated for any reason other than the Court's rejection of this Plea Agreement under Fed. R. Crim. P. 11(c)(5), the government may introduce the defendant's statements

17

into evidence in any prosecution.  If, however, the Court rejects this Plea Agreement under Fed. R. Crim. P. 11(c)(5), and the defendant withdraws the guilty plea pursuant to Fed. R. Crim. P. 11(d)(2)(A), the government will not be permitted to use any of the defendant's statements in this Plea Agreement.  To the extent that Rule 11(f) of the Federal Rules of Criminal Procedure and/or Rule 410 of the Federal Rules of Evidence are inconsistent with this paragraph, the defendant waives (gives up) any protections under those rules.

g. **Government's Discretion to Recommend a Sentence:**  Unless a stipulation in this agreement explicitly limits the government's discretion with respect to its recommendations at sentencing, this agreement does not prevent the government from urging the sentencing Court to find that a particular offense level, criminal history category, ground for departure, or guidelines range applies; from recommending a specific sentence within the applicable guidelines range as determined by the Court or as urged by the government; or, if the government deems appropriate, recommending that the Court impose a sentence above the applicable guidelines range.

h. **Sentencing-Related Information:**  The government has the right to advise the sentencing Court and the Probation Office of any information, in aggravation or mitigation of sentencing, whether or not encompassed within the count(s) to which the defendant has agreed to plead guilty, subject only to the limitation described in U.S.S.G. §1B1.8.  No stipulation in this plea agreement limits the obligations of both parties to ensure that the sentencing Court has all information pertinent to its determination of an appropriate sentence.  The parties may provide any factual information relevant to sentencing to the Probation Office and/or to the Court, without

18

limitation, before or after the completion of the Presentence Investigation Report. The parties agree that the submission of such information shall not be deemed "advocacy" in violation of any stipulation in this plea agreement.

    i.  **Supervised Release Term and Conditions:** If the defendant is placed on supervised release, under some circumstances, including the defendant's violation of one or more supervised release conditions, the Court may extend the term of supervised release, and may modify, reduce, or enlarge the conditions of such release.

F.  **<u>Other Adverse Consequences:</u>** The following are some examples of the adverse consequences of pleading guilty other than the sentence imposed by the Court, along with any judicial order of forfeiture and/or restitution:

    j.  Conviction of a felony may result in the loss of civil rights, including, but not limited to, the right to vote and the right to possess firearms.

    k.  If the defendant is not a United States citizen, such conviction may result in deportation or removal from the United States, may bar readmission to the United States if the defendant leaves the country, and may result in a denial of a pending or future application for citizenship. If the defendant is a naturalized citizen, such conviction may result in denaturalization, followed by deportation or removal from the United States. Under federal law, removal or deportation may be an almost certain consequence of a conviction for a broad range of federal offenses, including, but not limited to, aggravated felonies, as defined in 8 U.S.C. § 1101(a)(43), and crimes of moral turpitude, which includes crimes involving fraud. Removal and other immigration consequences are the subject of a separate proceeding. No one, including the defendant's attorney and the Court, can predict with certainty the effect of the

19

conviction resulting from this agreement on the defendant's immigration status. The defendant understands this uncertainty and nonetheless wishes to plead guilty regardless of any immigration consequences that the guilty plea may entail, even if the consequence is the defendant's automatic removal from the United States.

l. A felony conviction may adversely affect the defendant's ability to hold certain professional licenses and may impair the defendant's ability to do business with federal, state, and local governments or to receive benefits from such governments.

There may be other adverse consequences as well, some of them unforeseeable.  It may be difficult or impossible to predict all of the adverse consequences of the defendant's guilty plea.  The defendant agrees that any resulting adverse consequences, whether or not foreseen or foreseeable, will not provide a basis for withdrawing from the guilty plea described in this agreement or otherwise challenging the resulting conviction and sentence.

G. **Restitution:** Independent of any agreement to pay restitution, and whether there is any such agreement, the sentencing Court may be required to order that the defendant pay restitution to any victim of the offense(s) of conviction under the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A.  In addition, the sentencing Court may have the authority to order that the defendant pay restitution to any victim of the offense(s) of conviction pursuant to 18 U.S.C. §§ 3663 & 3664. In any case involving a conviction for a sexual exploitation offense in chapter 110 of title 18 of the United States Code, the Court must order restitution for the full amount of the victim's losses as determined by the court. The victim's losses include, but are not limited to medical services related to physical, psychiatric, or psychological care; physical or occupational therapy or rehabilitation; necessary transportation, temporary housing, and child

care expenses; lost income; attorney's fees and other costs; and any other losses suffered by the victim as a proximate result of the offense. The restitution payment will be in addition to any other civil or criminal penalty authorized by law.

H. **Forfeiture:** If the defendant has agreed to forfeiture of assets, the defendant agrees to the following terms and conditions:

m.  The defendant hereby forfeits, to the United States, all right, title, and interest of any nature in any and all assets that are subject to forfeiture, including substitute assets, as set forth above, whether those assets are in the possession or control of the defendant, a nominee, or some other third party.

n.  The defendant consents to the entry of an order of forfeiture of the assets described above.

o.  The defendant is aware that pursuant to Rule 32.2(b)(4)(A) of the Federal Rules of Criminal Procedure, a preliminary order of forfeiture becomes final as to a given defendant at sentencing or at any time before sentencing if the defendant consents. The defendant consents that the preliminary order of forfeiture in this case shall become final as to the defendant before sentencing, as of the date the preliminary order of forfeiture is entered by the Court. The defendant understands that the government, upon entry of the preliminary order of forfeiture, will address any potential third party claims pursuant to Rule 32.2(c), and seek to finalize forfeiture.

p.  Forfeiture of the defendant's assets will not satisfy all, or any portion of, a fine, restitution, or other monetary penalty that the Court may impose upon the defendant in addition to forfeiture. Satisfaction of all, or any portion of, any restitution, fine, or

other penalty that the Court may impose upon the defendant in addition to forfeiture will not satisfy all, or any portion of, any forfeiture judgment ordered by the Court.

q. In the event that any successful claim is made, by any third party, to the assets described above, the defendant agrees to forfeit substitute assets equal in value to the assets transferred to any such third party. The defendant agrees that forfeiture of substitute assets shall not be deemed an alteration of the Defendant's sentence.

r. The defendant agrees to cooperate with the United States by taking whatever steps are necessary to pass clear title to the United States of any forfeitable assets, including but not limited to, surrendering title; completing any documents or legal proceedings required to transfer assets to the United States; and taking necessary steps to ensure that assets subject to forfeiture are not sold, disbursed, expended, destroyed, damaged, hidden or otherwise made unavailable for forfeiture or removed beyond the jurisdiction of the Court.

s. The defendant waives the right to a jury trial on the forfeiture of assets. The defendant waives all constitutional, legal, and equitable defenses to the forfeiture of assets, as provided by this agreement, in any proceeding, including but not limited to any jeopardy defense or claim of double jeopardy or any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of an excessive fine.

t. The defendant acknowledges that the government may institute civil or administrative proceedings against any or all of the defendant's forfeitable assets, including, but not limited to substitute assets and any forfeitable assets not identified by the defendant, and agrees not to contest any such forfeiture proceedings.

u.  The defendant represents and warrants that the defendant has no direct or indirect interest in any property, real or personal, or other asset subject to forfeiture by virtue of this plea agreement, other than those listed above.

v.  In the event the government determines that the defendant has breached any condition of this plea agreement, none of the forfeited property shall be returned to the defendant, nor shall the defendant assert any claim to the forfeited property.  The defendant shall not reacquire any forfeited property, directly or indirectly, through family members, nominees, friends, or associates.

I. **Determination of Financial Condition and Payment of Interest and Penalties:**

w.  In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees fully to disclose all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party.

x.  The defendant will promptly submit a complete, accurate, and truthful financial statement to the United States Attorney's Office, in a form it provides and as it directs.

y.  The defendant authorizes the United States Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

z.  Interest and penalties may accrue, as a matter of law, on any unpaid financial obligation imposed as part of the defendant's sentence, from as early as the date of sentencing.

J. **Remedies for Breach:**

aa. Should the government determine that the defendant, after the date the defendant has signed this plea agreement, (i) has committed any further crime or violated any

23

condition of release or supervision imposed by the Court (whether or not charged); (ii) has given false, incomplete, or misleading testimony or information; or (iii) has moved to withdraw the defendant's guilty plea for reasons other than those described in this agreement or otherwise has breached any term or condition of this plea agreement or supplemental agreements with the government, the government will have the right, in its sole discretion, to void this agreement, in whole or in part. In the event of such breach, the defendant will remain obligated to plead guilty and otherwise comply with the terms of this agreement and will not be permitted to withdraw the defendant's guilty plea under this agreement. The defendant will be subject to prosecution for any federal criminal violation of which the government has knowledge, including but not limited to charges that this Office has agreed to dismiss or not to prosecute under this agreement.

bb. If the defendant breaches this agreement, the government will have the following remedies, among others, available to it:

    i. To bring prosecution for any federal criminal offenses dismissed or not prosecuted under this agreement. The defendant waives (gives up) any defense or objection to the commencement of any such prosecution that is not time-barred by the applicable statute of limitations as of the date on which the defendant signed this plea agreement, notwithstanding the expiration of the statute of limitations between the signing of the agreement and the commencement of any such prosecution.

    ii. In connection with any such prosecution, any information, statement, and testimony provided by the defendant, and all leads derived therefrom, may be

used against the defendant, without limitation and without regard to any rights the defendant may have under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410.

iii. To utilize any information, statement, or testimony provided by the defendant in any proceeding, including at sentencing, notwithstanding U.S.S.G. §1B1.8;

iv. To advocate if, and how, any particular adjustment or specific offense characteristic affects the applicable Sentencing Guidelines range without regard to any contrary stipulations contained in this agreement;

v. To refrain from making any sentencing-related motion favorable to the defendant without regard to any provision in this agreement obligating the government to consider making or make such motion upon fulfillment of certain conditions;

vi. To urge the sentencing Court to take the defendant's breach into account when imposing sentence;

vii. To recommend any sentence the government deems appropriate, even if such recommendation is at odds with any stipulation in this agreement.

K. **Limitations:** This agreement is between the United States Attorney's Office for the Northern District of New York and the defendant. References to "the government" in this agreement refer only to that Office. This agreement does not bind any other federal, state, or local prosecuting authorities. Furthermore, this agreement does not prohibit the United States, any agency thereof, or any third party from initiating or prosecuting any civil or administrative proceedings directly or indirectly involving the defendant, including, but not limited to, proceedings by the Internal Revenue Service relating to potential civil tax liability, proceedings relating to the forfeiture of assets, and proceedings by the Department of Homeland Security,

Bureau of Citizenship and Immigration Services relating to the immigration status of the defendant.

L.   **Agreement Must be Signed; Modifications Must be Written or on the Record:** This agreement, to become effective, must be signed by all of the parties listed below.  No promises, agreements, terms, or conditions other than those set forth in this plea agreement will be effective unless memorialized in writing and signed by all parties or confirmed on the record before the Court.

M.   **Agreement to Plead Guilty Voluntary:** The defendant acknowledges reading each of the provisions of this plea agreement with the assistance of counsel and understands its provisions. The defendant further acknowledges that the defendant's agreement to plead guilty is voluntary and did not result from any force, threat, or promises (other than the promises in this plea agreement and any written supplemental agreements or amendments).

GRANT C. JAQUITH
United States Attorney

_____          2/19/19
Michael F. Perry,                                        Date
Bar Roll No. 518952
Carina H. Schoenberger,
Bar Roll No. 519684
Assistant United States Attorneys


_____          2/14/19
Andrew N. LaVigne                                    Date
Defendant

                                                              2/14/19
_____          Date
Luciano Lama
Attorney for Defendant
Bar Roll No. 507049

26

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.    3:19-CR-61 (TJM) |
| | ) | |
| **v.** | ) | **Plea Agreement Addendum** |
| | ) | |
| **ANDREW N. LaVIGNE,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

The United States of America, by and through its counsel of record, the United States Attorney for the Northern District of New York, and defendant **ANDREW N. LaVIGNE** (hereinafter "the defendant"), by and through the defendant's counsel of record, hereby enter into the following agreement as an addendum to the plea agreement signed by the defendant in the above-captioned case on February 14, 2019 (the "Plea Agreement"):

1) Paragraph (1)(e) of the Plea Agreement provides:

> Pursuant to 18 U.S.C. § 981(a)(1)(c), 28 U.S.C. § 2461, and 21 U.S.C. § 853(p), the defendant will consent to entry of an order directing forfeiture to the United States of the substitute assets, or to a money judgment, all as more fully set out below:
>
> > (1)    A money judgment in the amount of $1,000,000.00, representing the unrecovered proceeds obtained by the defendant as a result of the conduct charged in Count 3 [of the Information in the above-captioned case, for Mail Fraud].

2) The parties agree that as a result of acts and omissions by the defendant, the directly forfeitable property obtained by the defendant as a result of the conduct charged in Count 3 of the Information in the above-captioned case: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be divided without difficulty.  Accordingly, the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p) and Fed. R. Crim. P. 32.2(e).  Specifically, without limitation on its ability to forfeit other substitute assets if necessary to satisfy the defendant's obligations under the Plea Agreement, the United States of America is entitled to forfeit the following property:

(a) Any and all proceeds, less a reasonable commission, resulting from the sale of any of the items provided by the defendant to Goldin Auctions on or about March 7, 2019, for sale on consignment.  An itemized list of the items is attached as **Exhibit A.**

(b) Any and all proceeds, less a reasonable commission, resulting from the sale of any of the items provided by the defendant to RMY Auctions on or about February 26, 2019, for sale on consignment.

(c) Collectibles owned by the defendant.  Such collectibles include all those stored at the defendant's residence at ████████████, in Lansing, New York, and its outbuildings, as of March 21, 2019.

3)   The proceeds of liquidating the property described in Paragraph 2 of this addendum to the Plea Agreement will be used to satisfy part or all of the defendant's financial obligations created

2

by the Plea Agreement and/or that may be imposed by the Court, up to the total amount of such financial obligations.


GRANT C. JAQUITH
United States Attorney


Michael F. Perry,
Bar Roll No. 518952
Carina H. Schoenberger,
Bar Roll No. 519684
Assistant United States Attorneys

_____   3/27/19
                   Date


Andrew N. LaVigne
Defendant

_____   3/27/19
                   Date


Luciano Lama, Esq.
Attorney for Andrew N. LaVigne

_____   3/27/19
                   Date


3

# EXHIBIT A

# goldin**auctions**.com

160 E 9th Avenue • Suite A • Runnemede, NJ 08078 • 856.767.8550

## SCHEDULE A ATTACHED TO GOLDIN AUCTIONS MASTER CONSIGNMENT AGREEMENT

This Schedule A consists of _____ page(s), including this page. You must initial each page.

DESCRIPTION OF PROPERTY

1. 1974 Baseball HOF Yearbook
2. Knute Rockne Dinner Program - JSA
3. Knute Rockne Certificate
4. 1938-39 Autograph Book - needs cert
5. Jackie Robinson Cut - Stnion
6. J. Franklin Baker Cut - Stnion
7. Munson Postcard - PSA
8. Mathewson Scorecard
9. Tommy Henrich / Mickey Over Photo
10. Mantle 8x10
11. RR Auction Lot (7 pieces)
12. 55 Yankee Tour of Japan Album
13. Bruce Smith Signature
14. 69 Munson Rookie Assignment Contract
15. Babe Ruth Signed 2x4 - JSA
16. Lou Gehrig Signature
17. 3 Yankee Brochures - Wagner, Speaker, Mack, Elston
18. Cuts - Speaker, Mack, Paige (Simon Sports)
19. Thurman Munson Lifetime Pass
20. Lot of 7 Munson Postcards
21. HOF CaVALCADE Ticket
22. Manville Testimonial Dinner signed by Ruth, Wagner, Etc.
23. JL Wilkinson Signed Bank Document
24. Harry Wright ticket
25. Babe Ruth 3x5 Card

Additional Comments:

SA 112315

# goldin**auctions**.com

160 E 9th Avenue • Suite A • Runnemede, NJ 08078 • 856.767.8550

## SCHEDULE A ATTACHED TO GOLDIN AUCTIONS MASTER CONSIGNMENT AGREEMENT

This Schedule A consists of _____ page(s), including this page. You must initial each page.

DESCRIPTION OF PROPERTY

1. Sopranos Giclee Signed by entire Cast
2. 53 Yankees Team Signed panorama photo — JSA
3. Spalding 1920 Trophy - needs repair
4. Thurman Munson Trophy - needs repair
5. Spalding 1920" Trophy (missing First Base)
6. Frank Baker Mini Bat - 1910
7. ~~Roger Clemens Ball~~
8. ~~Ron Darling Ball~~
9. 1930 Notre Dame Football Review - 29 Sigs
10. 1948 Bowman Football cards in Album (2)
11. 1949 Bowman Baseball Card Set
12. Babe Ruth Statue - Bronze
13. Dark town Battery Bank
14. Mantle Career Ring
15. A's uniform
16. Jeter "Flip" Signed (2) - Steiner
17. Jeter "Dive" Signed (2) - Steiner
18. Mantle Signed 11x14 JSA
19. Mantle Signed Art 1953 Topps - Heritage
20. Mantle Dickey Signed photo - PSA
21. Mantle Signed photo - PSA
22. Jeter Signed 8x10 MLB holo
23. Jeter Signed 8x10
24. Cobb Mini Bat
25. Ruth + Gehrig Baseball

Additional Comments:

SA 112315

# goldin**auctions**.com

160 E 9th Avenue • Suite A • Runnemede, NJ 08078 • 856.767.8550

## SCHEDULE A ATTACHED TO GOLDIN AUCTIONS MASTER CONSIGNMENT AGREEMENT

This Schedule A consists of _____ page(s), including this page. You must initial each page.

DESCRIPTION OF PROPERTY

1. Ruth + Gehrig + Cardinals Ball - JSA
2. Ruth + Gehrig + Maranville Ball - JSA
3. Ruth single Signed Ball - JSA
4. ~~Frisch McKechnie, Hartnett Martin, etc Ball~~
5. Mantle High School yearbook (2)
6. 62 Yankees / Indians Signed progam - JSA
7. 1968 Elmira Pioneers Progam - PSA
8. 1939 Walter Johnson Letter - JSA
9. Walter Johnson Testmonial Dinner
10. Marilyn Monroe Match Holder
11. Joe DiMaggio Tie Clip
12. ~~Knute Rockne Postcard - JSA~~
13. 1914 Cigar Box
14. Maris / Mantle Ball (2) - PSA
15. Mantle Signed Balls (10) - PSA
16. 51 Yankees Black Bat
17. George Harry Wright letter
18. Charles Philippe Cut - PSA
19. Knute Rockne Signed photo - JSA
20. 1937 All Star Signed photo - PSA
21. 1973 Yankees Progam Signed JSA
22. Walter Johnson Letter with Envelope
23. 1937 All Star game Photo - Premier seat
24. Knute Rockne Letter - JSA
25. 24 Baseballs List in Box

Additional Comments:

SA 112315

# goldin**auctions**.com

160 E 9th Avenue • Suite A • Runnemede, NJ 08078 • 856.767.8550

## SCHEDULE A ATTACHED TO GOLDIN AUCTIONS MASTER CONSIGNMENT AGREEMENT

This Schedule A consists of _____ page(s), including this page. You must initial each page.

DESCRIPTION OF PROPERTY

1. 1934 George Reach document (Spalding)
2. AJ Reach 1922 Document
3. Munson Popper Dan Banquet
4. ~~Mantle 1951 Postcard~~
5. Babe Ruth Signed Photo
6. Connie Mack Signed photo
7. Alexander Cartwright - Stoso 10/10/1a
8. Babe Ruth Signature
9. Lou Gehrig Signed letter
10. Mantle + Maris 61 Contract
11. Lot of Signed Baseball Cards incldg 3 Jeters - need slabs
12. Bob Cerv used Mantle Bat
13. Muhammad Ali Signed Olympic Torch
14. _____
15. _____
16. _____
17. _____
18. _____
19. _____
20. _____
21. _____
22. _____
23. _____
24. _____
25. _____

Additional Comments:

SA 112315